UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JONATHAN HUGHES,<br><br>            Plaintiff,<br><br>      v.<br><br>BRANDON KELLY,<br><br>            Defendants. | Case No.   1:24-cv-00660-HBK (PC)<br><br>ORDER TO RANDOMLY ASSIGN CASE TO A DISTRICT JUDGE<br><br>FINDINGS AND RECOMMENDATIONS TO DISMISS CASE[1]<br><br>(Doc. No. 8)<br><br>FOURTEEN-DAY OBJECTION PERIOD |

Pending before the Court for screening under 28 U.S.C. § 1915A is Plaintiff's First Amended Complaint. (Doc. No. 8, "FAC"). For the reasons set forth below, the undersigned recommends the district court dismiss the FAC because it fails to state any cognizable federal claim and any further amendments would be futile.

**SCREENING REQUIREMENT**

A plaintiff who commences an action while in prison is subject to the Prison Litigation Reform Act ("PLRA"), which requires, *inter alia*, the court to screen a complaint that seeks relief against a governmental entity, its officers, or its employees before directing service upon any defendant. 28 U.S.C. § 1915A. This requires the court to identify any cognizable claims and dismiss the complaint, or any portion, if it is frivolous or malicious, if it fails to state a claim upon

---

[1] This matter was referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 302 (E.D. Cal. 2023).

1   which relief may be granted, or if it seeks monetary relief from a defendant who is immune from
2   such relief.  *See* 28 U.S.C. §§ 1915A(b)(1), (2).

3         At the screening stage, the court accepts the factual allegations in the complaint as true,
4   construes the complaint liberally, and resolves all doubts in the plaintiff's favor.  *Jenkins v.*
5   *McKeithen*, 395 U.S. 411, 421 (1969); *Bernhardt v. L.A. County*, 339 F.3d 920, 925 (9th Cir.
6   2003).  The Court's review is limited to the complaint, exhibits attached, materials incorporated
7   into the complaint by reference, and matters of which the court may take judicial notice.  *Petrie v.*
8   *Elec. Game Card, Inc.*, 761 F.3d 959, 966 (9th Cir. 2014); *see also* Fed. R. Civ. P. 10(c).  A court
9   does not have to accept as true conclusory allegations, unreasonable inferences, or unwarranted
10  deductions of fact.  *Western Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981).  Critical
11  to evaluating a constitutional claim is whether it has an arguable legal and factual basis.  *See*
12  *Jackson v. Arizona*, 885 F.2d 639, 640 (9th Cir. 1989).

13        The Federal Rules of Civil Procedure require only that a complaint include "a short and
14  plain statement of the claim showing the pleader is entitled to relief . . . ."  Fed. R. Civ. P. 8(a)(2).
15  Nonetheless, a claim must be facially plausible to survive screening.  This requires sufficient
16  factual detail to allow the court to reasonably infer that each named defendant is liable for the
17  misconduct alleged.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Moss v. U.S. Secret Service*,
18  572 F.3d 962, 969 (9th Cir. 2009).  The sheer possibility that a defendant acted unlawfully is not
19  sufficient, and mere consistency with liability falls short of satisfying the plausibility standard.
20  *Iqbal*, 556 U.S. at 678; *Moss*, 572 F.3d at 969.  Although detailed factual allegations are not
21  required, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory
22  statements, do not suffice," *Iqbal*, 556 U.S. at 678 (citations omitted), and courts "are not required
23  to indulge unwarranted inferences," *Doe I v. Wal-Mart Stores, Inc.*, 572 F.3d 677, 681 (9th Cir.
24  2009) (internal quotation marks and citation omitted).

25        If an otherwise deficient pleading can be remedied by alleging other facts, a pro se litigant
26  is entitled to an opportunity to amend their complaint before dismissal of the action.  *See Lopez v.*
27  *Smith*, 203 F.3d 1122, 1127-29 (9th Cir. 2000) (en banc); *Lucas v. Department of Corr*., 66 F.3d
28  245, 248 (9th Cir. 1995).  However, it is not the role of the court to advise a pro se litigant on how

to cure the defects. Such advice "would undermine district judges' role as impartial decisionmakers." *Pliler v. Ford*, 542 U.S. 225, 231 (2004); *see also Lopez*, 203 F.3d at 1131 n.13. Furthermore, the court in its discretion may deny leave to amend due to "undue delay, bad faith or dilatory motive of the part of the movant, [or] repeated failure to cure deficiencies by amendments previously allowed . . . ." *Carvalho v. Equifax Info. Srvs., LLC*, 629 F.3d 876, 892 (9th Cir. 2010).

## BACKGROUND AND SUMMARY OF OPERATIVE PLEADING

Plaintiff, a state prisoner proceeding pro se and *in forma pauperis*, initiated this action by filing a civil rights complaint under 42 U.S.C. § 1983. (Doc. No. 1, "Complaint"). On August 30, 2024, the undersigned screened Plaintiff's Complaint and found that it failed to state any cognizable constitutional claim. (*See* Doc. No. 7). The Court advised Plaintiff of the pleading deficiencies and applicable law and afforded Plaintiff the opportunity to file an amended complaint. (*Id.*). Plaintiff timely filed the instant FAC. (Doc. No. 8).

The events in the FAC took place at California Substance Abuse Treatment Facility in Corcoran, California ("SATF"). (*See generally id.*). Petitioner identifies correctional officer Brandon Kelly as the sole Defendant. (*Id.* at 1). The FAC alleges excessive use of force by the Defendant in violation of Plaintiff's Eighth Amendment right to be free from cruel and unusual punishment. (*See id.* at 3). As relief, Plaintiff seeks $4 million in damages. (*Id.* at 5). The following facts are presumed to be true at this stage of the screening process.

On April 5, 2024 Plaintiff believed that Defendant Kelly intended to move him into a cell which was a danger to his safety. (Doc. No. 8 at 3). Plaintiff exited his cell and approached Kelly to explain his concerns about the cell assignment, to which Kelly responded that Plaintiff should "go try and find a cell or go back to [his] cell." (*Id.*). Plaintiff remained outside the cell as Defendant Kelly began to yell at him to get down and unholstered his pepper spray. (*Id.* at 4). Plaintiff turned away from Kelly and put his hands in the air, and Kelly continued to direct Plaintiff to get down. (*Id.*). Defendant's "partner" arrived and was told by Kelly to "back up." (*Id.*). Defendant Kelly then deployed an unspecified amount of pepper spray into Plaintiff's face, for an unspecified amount of time. (*Id.*). Once the responding officer arrived, Plaintiff was

3

promptly handcuffed and taken to wash off. (*Id.*). Plaintiff asserts that as a result of this incident he suffered permanent hearing loss and now has to wear a hearing aid. (*Id.* at 5).

## APPLICABLE LAW AND ANALYSIS

### A. Eighth Amendment Excessive Use of Force

Prison officials who use excessive force against inmates violate the inmate's Eighth Amendment right to be free from cruel and unusual punishment. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994); *Clement v. Gomez*, 298 F.3d 898, 903 (9th Cir., 2002). "[W]henever prison officials stand accused of using excessive physical force in violation of the [Eighth Amendment], the core judicial inquiry is . . . whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992). When determining whether the force was excessive, the court looks to the "extent of injury suffered by an inmate . . . the need for application of force, the relationship between that need and the amount of force used, the threat 'reasonably perceived by the responsible officials,' and 'any efforts made to temper the severity of a forceful response.'" *Id*. at 7 (quoting *Whitley v. Albers*, 475 U.S. 312, 321 (1986)).

While *de minimis* uses of physical force generally do not implicate the Eighth Amendment, significant injury need not be evident in the context of an excessive force claim, because "[w]hen prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated." *Hudson*, 503 U.S. at 9. Officers may reasonably use force in a "good-faith effort to maintain or restore discipline" but may not apply force "maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992).

Turning to the instant case, the facts alleged support the inference that Defendant Kelly used pepper spray not maliciously or sadistically to cause harm, but in a good faith effort to maintain or restore discipline. Plaintiff exited his cell and ignored Defendant Kelly's repeated commands to return to his cell. (Doc. No. 8 at 4). In response to Kelly's orders to "get down" Plaintiff did not get down, but rather turned away from Kelly and put his hands up. (*Id.*). Plaintiff, therefore disregarded multiple direct orders from the Defendant correctional officer.

While pepper spray is not justified when an inmate only questions an order or seeks

redress for an officer's action, it can be justified when an inmate fails to comply with an order. *See Williams v. Benajmin*, 77 F.3d 756, 763 (4th Cir. 1996) (finding no Eighth Amendment violation where officer administered small quantity of pepper spray after prisoner asked "Why?" in response to command); *see also Jackson v. Morgan*, 19 F. App'x 97, 102 (4th Cir. 2001) (upholding use of twelve bursts of pepper spray at three different times when inmate refused to comply with repeated commands to move from his cell). Prison inmates are not allowed to pick and choose those orders they will obey. *See Soto v. Dickey*, 744 F.2d 1260, 1270 (7th Cir. 1984) (correctional officers are not required to concede to the demands of inmates or wait them out in order to avoid the use of force). In fact, the Ninth Circuit has held that "the policy of spraying prisoners with pepper spray for refusing to follow directions falls within the wide ranging zone of deference accorded to prison officials in shaping preventive measures intended to reduce incidents of breaches of prison discipline." *Stewart v. Stewart*, 60 F. App'x 20, 22 (9th Cir. 2003).

Here, Plaintiff admits that Kelly ordered him to "get down" multiple times and instead he chose to turn away. (Doc. No. 8 at 4). Kelly's choice to use pepper spray when Plaintiff failed to comply with his orders, without more, does not support a claim that Defendant's use of force falls outside of this "zone of deference" and was done maliciously and sadistically to harm Plaintiff. *See Hudson*, 503 U.S. at 6-7.

Even when an objective need for force exists, a constitutional violation may still occur when the amount of force used is not commensurate with the situation. *Hudson,* 503 U.S. at 9-10). The Ninth Circuit has ruled that the "use of [tear gas] in small amounts may be a necessary prison technique if a prisoner refuses after adequate warning to move from a cell or upon other provocation presenting a reasonable possibility that slight force will be required." *Spain v. Procunier*, 600 F.2d 189, 195 (9th Cir.1979). However, the Ninth Circuit has also noted that the "quantity of pepper spray discharged by the officers is unquestionably material, because the amount of force is central to a claim sounding in the alleged use of excessive force." *Furnace v. Sullivan*, 705 F.3d 1021, 1026 (9th Cir. 2013) ("[I]t is generally recognized that 'it is a violation of the Eighth Amendment for prison officials to use mace, tear gas or other chemical agents in

1   quantities greater than necessary or for the sole purpose of infliction of pain.'").

2         Here, there are no facts from which the court can infer that Defendant used more pepper
3   spray than was reasonable for the purpose at hand simply to inflict pain.  *See Procunier,* 600 F.2d
4   at 196  ("[U]se of nondangerous quantities of the substance in order to prevent a perceived future
5   danger does not violate 'evolving standards of decency' or constitute an 'unnecessary and wanton
6   infliction of pain"); *see also Furnace,* 705 F.3d at 1028.  Other than pepper spray, no force was
7   used on Plaintiff.  (Doc. No. 8 at 4).  Plaintiff was handcuffed when the responding officer arrived
8   and then taken to decontaminate promptly.  Thus, the facts do not support the inference that the
9   amount of force Kelly used was disproportionate to the threat he presented.

10         Indeed, Defendant exercised reasonable efforts to temper the severity of a forceful
11   response.  According to the FAC, Defendant Kelly issued repeated verbal orders for Plaintiff to
12   "get down" before deploying the pepper spray.  (Doc. No. 8 at 4);  *see Johnson v. Schneider,*
13   2016 WL 3033691, at *4 (C.D. Cal. Apr. 21, 2016) (defendants "tempered the forcefulness of
14   their response by starting with verbal commands and only escalating to pepper spraying, grabbing
15   and striking [p]laintiff as [p]laintiff continued to resist"), *report and recommendation adopted,*
16   2016 WL 3033690 (C.D. Cal. May 26, 2016).  Indeed, when Plaintiff failed to comply,
17   Defendant's choice to use pepper spray instead of other, more severe force demonstrates a
18   tempered response.  *See Soto,* 744 F.2d at 1262 (a limited application of mace may be "much
19   more humane and effective than a flesh to flesh confrontation with an inmate"); *see also Williams*
20   *v. Benjamin,* 77 F.3d 756, 763 (4th Cir. 1996) ("a limited use of mace constitutes a relatively
21   'mild' response compared to other forms of force, the initial application of mace indicates a
22   'tempered' response by the prison officials.").  Further reflecting a tempered response, Plaintiff
23   was promptly handcuffed and taken to wash the pepper spray off following the incident.  (Doc.
24   No. 8 at 4); *See Soto,* 744 F.2d at 1262 (prompt washing of the maced area of the body will
25   usually provide immediate relief from any discomfort).  Thus, this factor also weighs in favor of
26   finding that Defendant did not violate Plaintiff's Eighth Amendment rights.

27         Finally, Plaintiff's injuries from the incident appear to be minimal.  The FAC alleges that
28   "[Defendant] permanently damaged [Plaintiff's] hearing" and that he now has to use a hearing

aid. (Doc. No. 8 at 5). However, the FAC does not allege facts to support a causal connection between Kelly's use of pepper spray and Plaintiff's hearing loss, nor can the Court infer such a connection based on Plaintiff's conclusory assertion, which is contrary to common sense.[2] *See Western Mining Council*, 643 F.2d at 624 (a court need not accept as true conclusory assertions, unwarranted inferences or unwarranted deductions of fact). Other than the alleged loss of hearing, Plaintiff did not point to any lasting physical injuries he suffered from the incident. While the absence of a significant injury is not dipositive of an excessive force claim, the extent of an inmate's injury is one factor indicative of whether the force used was necessary in a particular situation. *Hudson*, 503 U.S. at 7 ("The absence of serious injury is therefore relevant to the Eighth Amendment inquiry, but does not end it.").

### B. Violation of CDCR Policy

To the extent Plaintiff asserts he suffered a constitutional violation because Defendant Kelly violated CDCR's use of force policy, this is insufficient to state a claim. Plaintiff cites a memo he received from the California Department of Corrections and Rehabilitation ("CDCR") informing him that Kelly's actions on April 5 violated CDCR's use of force policy. (*Id.* at 6). Even assuming that Defendant was found to have violated the CDCR's use of force policy, a violation of "state departmental regulations do not establish a federal constitutional violation." *Cousins v. Lockyer*, 568 F.3d 1063, 1070 (9th Cir. 2009)*; see Case v. Kitsap County Sheriff's Dep't,* 249 F.3d 921, 930 (9th Cir. 2001) (quoting *Gardner v. Howard,* 109 F.3d 427, 430 (8th Cir. 1997) ("[T]here is no § 1983 liability for violating prison policy. [Plaintiff] must prove that [the official] violated his constitutional right . . . .")); *see also Gagne v. City of Galveston,* 805 F.2d 558, 560 (5th Cir. 1986). Accordingly, Plaintiff cannot state a federal constitutional claim based solely on Defendant's alleged violation of California state prison regulations.

---

[2] The Court takes judicial notice under Rule 201 of the Federal Rules of Evidence of the following information from the U.S. Department of Justice, Federal Bureau of Prisons: OC aerosol spray is an inflammatory agent which causes a burning sensation on the skin, tearing and closing of the eyes, and swelling of the mucus membranes. https://www.bop.gov/policy/progstat/5576_004.pdf (last visited: October 21, 2024). Federal Rule of Evidence 201 permits a court to take judicial notice of facts that are "not subject to reasonable dispute" because they are either "generally known within the trial court's territorial jurisdiction," or they "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b).

**CONCLUSION AND RECOMMENDATION**

Based on the above, the undersigned finds Plaintiff's FAC fails to state any cognizable claim. The FAC suffers from many of the same pleading deficiencies that the undersigned identified and explained to Plaintiff in screening his original Complaint. Plaintiff reasserted many of the same claims that were asserted in his Complaint, including that Defendant Kelly's violation of CDCR policy constitutes an Eighth Amendment excessive force claim, and that he was pepper sprayed with an unknown quantity for no reason. Despite being provided with guidance and the appropriate legal standards, Plaintiff was unable to cure the deficiencies identified above. A plaintiff's repeated failure to cure a complaint's deficiencies constitutes "a strong indication that the [plaintiff has] no additional facts to plead." *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 1007 (9th Cir. 2009) (citation and internal quotation marks omitted). Thus, the undersigned recommends that the district court dismiss the FAC without further leave to amend. *McKinney v. Baca*, 250 F. App'x 781 (9th Cir. 2007) (citing *Ferdik v. Bonzelet,* 963 F.2d 1258, 1261 (9th Cir.1992)) (noting discretion to deny leave to amend is particularly broad where court has afforded plaintiff one or more opportunities to amend his complaint).

ACCORDINGLY, it is **ORDERED**:

The Clerk of Court randomly assign this case to a district judge for consideration of these Findings and Recommendation.

It is further **RECOMMENDED**:

The First Amended Complaint (Doc. No. 8) be dismissed under § 1915A for failure to state a claim and this case be dismissed.

**NOTICE TO PARTIES**

These Findings and Recommendations will be submitted to the United States District Judge assigned to this case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within 14 days after being served with a copy of these Findings and Recommendations, a party may file written objections with the Court. *Id*.; Local Rule 304(b). The document should be captioned, "Objections to Magistrate Judge's Findings and Recommendations" and shall not exceed **fifteen**

**(15) pages**. The Court will not consider exhibits attached to the Objections. To the extent a party wishes to refer to any exhibit(s), the party should reference the exhibit in the record by its CM/ECF document and page number, when possible, or otherwise reference the exhibit with specificity. Any pages filed in excess of the fifteen (15) page limitation may be disregarded by the District Judge when reviewing these Findings and Recommendations under 28 U.S.C. § 636(b)(l)(C). A party's failure to file any objections within the specified time may result in the waiver of certain rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014).

Dated:     October 23, 2024

HELENA M. BARCH-KUCHTA
UNITED STATES MAGISTRATE JUDGE